22 C. C. P. A. (Patents)

## In re SPOHN.

### Patent Appeal No. 3507.

Court of Customs and Patent Appeals.
June 3, 1935.

Lester G. Budlong, of New York City (Elmer Stewart, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner, rejecting all of the claims of appellant's application, Nos. 11 to 20, inclusive, in view of the cited prior art. All of the claims are product claims.

Claims 11, 15, and 19 are illustrative and read as follows:

"11. A ready-to-eat toasted cereal food containing vitamins in active condition and dried yeast."

"15. A ready-to-eat toasted cereal food containing wheat, bran, and from 1 to 4% of yeast, by weight, said yeast having approximately 10,300 Chick & Roscoe units of vitamins per pound of dry yeast."

"19. A toasted ready-to-eat cereal food containing vitamins of the $B^1$, $B^2$ and D groups in active condition and dried yeast."

The references cited are:

Thompson (British), 10,927, June 15, 1900.

Lauhoff, 901,455, October 20, 1908.

Travis et al. (British), 195,343, complete not acc., application date, June 23, 1922.

Hooper, 1,557,053, October 13, 1925.

Kellogg, 1,569,861, January 19, 1926.

Steenbock, 1,680,818, August 14, 1928.

MacLean (British), 295,757, August 23, 1928.

Dass, 1,708,914, April 9, 1929.

Placak, 1,764,085, June 17, 1930.

Steenbock, 1,871,135, August 9, 1932.

"Vital Factors of Foods"—Ellis & MacLeod, D. Van Nostrand Co., New York, 1922, pp. 77, 81, and 148.

As will be observed from the above-quoted claims, the application relates to a toasted cereal food containing vitamins in active condition and dried yeast; or, as construed by the Patent Office tribunals, and according to appellant's specification, the alleged invention is a toasted cereal food carrying dried yeast containing vitamins in active condition.

The claims cover both ordinary and irradiated yeast. By the use of ordinary yeast, vitamins $B^1$ and $B^2$ are added to the toasted cereal, and, if the yeast is irradiated, vitamin D is also added.

It appears that in the ready-to-eat cereal food the vitamins naturally in the food are destroyed in the toasting process, appellant's specification stating that such vitamins cannot withstand a temperature materially in excess of 120° F.

It is admitted in appellant's specification that ready-to-eat toasted cereals were well known in the prior art. The problem solved by appellant was the imparting of active vitamins to toasted cereals. This was done by adding dried yeast, ordinary or irradiated, employing therefor a process with which we are not concerned in this appeal.

The references show, and appellant admits, that the functions of the vitamins which appellant added to the toasted cereal food, as a part of the intake of the

human system, were well-known to the prior art.

The patent to Hooper teaches the use of yeast as a constituent of foods, particularly a food which is intended for infants.

The Dass patent combines yeast with peanut butter.

The British patent to Travis et al. discloses a food composed of skimmed milk, fat, malt extract, yeast, and water.

The patent to Kellogg discloses a food in the form of flakes which may have added thereto a substance having medicinal qualities.

The Steenbock patent, No. 1,680,818, states:

"This invention relates particularly to a method of preparing antirachitic products of edible character, such as foods and medicines, and to the products obtained by such method of treatment. * * *

"The present invention is particularly concerned with the so-called antirachitic vitamin, but it is to be observed that it is possible to prepare food stuffs for man, and feeds for animals, possessing the properties, or principle, of two or more of the so-called vitamins. The same is true with respect to medicines."

He discloses the addition of antirachitic vitamins through the application to the foods of ultra violet or X-rays. He specifically refers to breakfast foods to which such vitamins may be added.

The Steenbock patent, No. 1,871,135, called a "continuation-in-part" of the application on which said patent No. 1,680,-818 was issued, states: "The present invention or discovery pertains to a method of antirachitically activating cereals and cereal products, such as meals, starches, flours, breakfast foods, etc., and to the products obtained by such method of treatment."

This patent, like patent No. 1,680,818, also deals with the addition of vitamins through the application of light rays, and further states as follows:

"For man, the use of activated cereals and cereal products has a direct value. Thus, the process is applicable to manufactured breakfast foods, starch, yeast, flour, meals, brans, etc.; and the general use of these substances in activated condition will tend strongly to improve health and prevent rachitis. * * *

"The process is applicable to grains, cereals, seeds, etc., generally, and to food products prepared therefrom. Grains, roughage, or mixtures thereof, may be irradiated and have imparted to them the antirachitic factor. Baked cereal products, dog biscuit, etc. may be similarly activated. Sterilization is not accomplished in effecting antirachitic activation."

The British patent to Lauhoff shows a process of spraying cereal flakes with a coating solution, followed by the drying of the flakes. The cereal is afterwards baked.

The Board of Appeals in its decision conceded that none of the references directly teach the addition of a yeast to a cereal food in the form of toasted flakes. In its decision the board stated:

"Appellant solved the problem of addition by applying the autolyzed irradiated yeast to the toasted flakes in the form of a mist followed by a quick drying of the thus treated material. The main question here involved seems to be: Did the solution of this problem of addition involve invention?

"The patent to Lauhoff shows it old to treat flaked food with an additional material in precisely the manner adopted by appellant. Lauhoff, to be sure, does not add a substance designed to increase the vitamin content of the flakes but, in view of the teachings of the other patents, we see nothing inventive in adding such a substance.

"We have given careful consideration to the brief presented in appellant's behalf but are unable to see wherein the new food product developed by appellant involved the exercise of invention. No new or unobvious result is obtained by the mixture developed and in our opinion the procedure involved is amply suggested by the Lauhoff patent."

In appellant's brief we find the following:

"The summary of the Board (R. 13, lines 11–14), reading as follows: 'The patents thus far discussed relate to the general use of yeast, either of the ordinary or irradiated type, as an article to be combined with food to increase its value,' is a correct statement of the value of these patents. However, they fail to teach the need for or how to supply vitamins to toasted ready-to-eat cereal foods since the peculiar high tempera-

ture toasting process to which such flakes are subjected presents problems all its own."

We are in agreement with the view of the board that, inasmuch as the references clearly show the addition of yeast, either of the ordinary or irradiated type, to edible products to increase their value, no exercise of the inventive faculty was exercised by appellant in combining either ordinary or irradiated yeast with a ready-to-eat toasted cereal. We must assume that it was within the knowledge of one skilled in the art that the toasting process would destroy the initial vitamins in the cereal. The references show that it was known to the art that yeast possesses in high degree vitamins of the $B^1$ and $B^2$ groups, and appellant concedes that, when yeast is irradiated, vitamins of the D group are also present. The references also show that it was old to combine yeast with foods not baked or toasted, to increase their value. With this knowledge, it seems obvious to us that there could be no invention in adding dried yeast to a toasted cereal food. See In re Spohn, 77 F.(2d) 770, 22 C. C. P. A. (Patents) ——; and In re Luke, 77 F.(2d) 772, 22 C. C. P. A. (Patents) ——, decided concurrently herewith.

Appellant in his brief relies very largely, for reversal of the decision appealed from, upon matters not appearing in the record before us. Two reports from a chemical laboratory appear in the brief, but are not found in the record; a quotation from a British patent is made in the brief, but such patent is not found in the record; and alleged facts concerning certain tests are set out in the brief, but we find nothing in the record respecting these tests.

Rev. St. § 4914, 35 U. S. C. § 62 (35 USCA § 62), provides that this court, "on petition, shall hear and determine such appeal, and revise the decision appealed from in a summary way, *on the evidence produced before the commissioner. * * *"* (Italics ours.)

For this reason, we may not consider any of the aforesaid matters of evidence, appearing in appellant's brief but not appearing in the record before us.

We find no error in the decision of the Board of Appeals, and it is affirmed.

Affirmed.